## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HMP Omnimedia, LLC; | Civil Action No.: |
| HMP Global, LLC<br>70 Swedesford Rd,<br>Malvern, Pennsylvania 19355 | |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| WOUND CARE PEOPLE, LTD;<br>WOUND CARE TODAY USA, LLC<br>EDWARD RUSLING; And<br>JEREMY BOWDEN | |
| Defendants. | |

## COMPLAINT

I. **INTRODUCTION**

As will be described in further detail within this Complaint, Wound Care People, Limited, Wound Care Today USA, LLC, Edward Rusling and Jeremy Bowden (collectively "Defendants") jointly engaged in a campaign of unlawful corporate conduct intending to cause, and causing, direct harm to the reputation and business interests of both HMP Omnimedia, LLC and HMP Global, LLC ("Plaintiffs"). This conduct includes, but is not limited to, unlawful display of Plaintiffs' proprietary business logos without knowledge or consent; active interference in business contracts Plaintiff have with employees and covert operations intending to steal Plaintiffs' business information to use in direct competition within the Wound Care space.

Defendants actions violate the plain language of 15 U.S.C. §§ 1051, *et seq.*; 17 U.S.C. §§ 501, *et seq.*; the Copyright, Designs and Patents Act 1988, c. 2, § 16 (UK); breach of contract; intentional interference of contractual relations; civil conspiracy; and the Pennsylvania Uniform Trade Secrets Act. Plaintiffs have suffered immediate and irreparable harm as well as tangible and intangible economic damages, as set explained herein. Furthermore, Defendants' collective actions are so heinous that an award of punitive damages is appropriate.

## II.  **PARTIES**

1.      Plaintiff HMP Global, LLC is a Pennsylvania limited liability company located at 70 Swedesford, Malvern, Pennsylvania, 19355.

2.      Plaintiff HMP Omnimedia, LLC is an independent subsidiary of HMP Global's vast network.

3.      Both Plaintiffs collectively partner with leading experts and professionals around the world to deliver annual events, medical strategy, and marketing for pharmaceutical and medical device customers.

4.      As part of their work, Plaintiffs spend significant sums of time, money and resources to develop brands, recognized throughout the world as representing exceptional quality within the international marketplace.

5.      As it relates to this Complaint, Plaintiffs have expended valuable resources, capital and investment into developing brands within the Wound Care space, and as just one example, launching the Wound Care Learning Network in 2019 to advance information about

the Symposium on Advanced Wound Care semi-annual events hosted in the Fall and Spring each year.

6.     Upon information and belief, Defendant Wound Care People, Limited ("WCP-UK") is a foreign limited company based in the United Kingdom with an office located at Unit G, Wixford Park, George's Elm Lane, Bidford upon Avon, Alcester, B50 4JS,

7.     Upon information and belief, Defendant Wound Care Today USA, LLC ("WCT-USA"), is a domestic limited liability company who performs work and has a registered agent located in Pennsylvania.

8.     Upon information and belief, WCP-UK provided resources and otherwise participated in the development of WCT-USA for the express purpose of becoming a direct competitor to Plaintiffs in the wound care market.

9.     Upon information and belief, Defendant Edward Rusling ("Defendant Rusling") is the Chief Executive of WCP-UK.

10.     Defendant, Jeremy Bowden ("Defendant Bowden") was employed as Senior Vice President for the Wound Care Division for HMP Global and, as such, was critical in developing both policy and practice related to the valuable brands which Plaintiffs developed in the Wound Care space.

11.     Indeed, Defendant Bowden was quoted in press releases touting Plaintiffs' HMP wound care brands, as just one example:

> We created the Wound Care Learning Network because we are committed to providing the global wound care community with the very best clinical education and information . . .We have infused our Editorial Board with

multidisciplinary advisors from across the wound care spectrum, all of whom offer unique perspective to help this comprehensive resource.  With the board's direction, we are building a singular digital network that will continue to evolve as the needs of the wound care community evolve, ensuring clinicians always have access to the information and education they need to improve clinical decision-making and patient outcomes."

HMP Launches Wound Care Network, (https://hmpglobal.com/news/hmp-launches-wound-care-learning-network) (Last Accessed; January 29, 2025).

### III.    JURISDICTION AND VENUE

12.    Subject matter jurisdiction for the claims of trademark infringement and copyright infringement is proper in this Court pursuant to 15 U.S.C. §§ 1051 *et seq.*, and 17 U.S.C. §§ 501, *et seq.* because they arise under Federal law.

13.    Supplemental jurisdiction for the claims regarding violations of foreign copyright law, breach of contract, intentional interference of contractual relations, civil conspiracy, and the Pennsylvania Uniform Trade Secrets Act are proper in this Court pursuant to 28 U.S.C. § 1367 because these claims form part of the same case or controversy as the claim for trademark and copyright infringement under United States law.

14.    The claim for copyright infringement under the laws of the United Kingdom is brought through the Berne Convention for the Protection of Literary and Artistic Works ("Berne Convention"), of which both the United States and the United Kingdom are signatories to.

15.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(a) in that Defendants are transacting business within this District. Venue is further appropriate

since a substantial part of the events giving rise to Plaintiffs' claims occurred in this judicial district.

IV.    **FACTUAL ALLEGATIONS**

16.    Plaintiff HMP Global is a leading force in the healthcare industry, offering a comprehensive range of events, educational resources, and market insights, all with the goal of enhancing patient care.

17.    Plaintiff HMP Global collaborates with top-tier experts worldwide to organize over 450 events each year, deliver medical strategies, and provide marketing services for pharmaceutical clients, creating a global network of nearly two million healthcare professionals across 600 specialties.

18.    Plaintiff HMP Omnimedia oversees content creation, provides commercial support, manages events, promotes, and handles production for HMP's suite of leading brands.

19.    Defendant Bowden worked for HMP for or around 22 years, ultimately serving as Senior Vice President, Group Publisher in HMP's Wound Care and Podiatry Division.

20.    Over that period of time, Defendant Bowden obtained critical knowledge about Plaintiffs' strategy in the Wound Care market, and was particularly knowledgeable about their future development plans for their brands and efforts to continue to be a leader within that market.

21.    Upon information and belief, Defendant Rusling solicited Defendant Bowden to leave Plaintiffs employ and work with him to develop a direct competitor to Plaintiffs in America.

22.     Upon information and belief, Defendant Bowden engaged in subversive tactics towards the end of his employment with HMP, intending to sabotage internal efforts to develop Plaintiffs' Wound Care brands so they would be vulnerable when he partnered with Defendant Rusling to form a competitor on American soil.

23.     On or around January 1, 2022, as part of an overall separation agreement Defendant Bowden received $2.1 million for his equity compensation agreement ("Equity Agreement") which contained explicit and express restrictive covenants so as to allow Plaintiffs proper time and distance to grow their important brands without Defendant Bowden using inside information for unfair competition within the marketplace. *See* Exhibit A.

24.     Instead of abiding by his contractual requirements, however and immediately after taking $2.1 million dollars, Defendant Bowden purposefully and abhorrently began to violate the Equity Agreement in numerous ways, presumably with Mr. Rushing's financing and support.

25.     As set forth in the Equity Agreement, Defendant Bowden was required to comply with the following noncompetition, nonsolicitation, and nondisclosure provisions therein:

*8.     Noncompetition, Nonsolicitation, and Nondisclosure. In exchange for the grant of Incentive Units hereunder, [your] continued employment by [HMP] or its Subsidiaries and for other good consideration…[you] and [HMP] agree as follows:*

*(a) During Grantee's employment with the Company or any Subsidiary and for the twenty-four (24) months after the termination of such employment for any reason (the "Term"), Grantee shall not engage in a Competing Business anywhere in the Protected Territory without the prior written consent of the*

*Company.  Grantee will be deemed to be engaged in a Competing Business if Grantee directly or indirectly engages in a Competing Business as an employee, consultant or other advisor, or owns any equity in, manages, operates, joins or controls or participates in the ownership, management, operation or control of any Person which is engaged in a Competing Business or lends to or otherwise finances such Person…*

*(i) "Competing Business" means any of the following businesses: (A) the Company and its Subsidiaries' business on the date hereof, (B) publishing and distributing in print format (including, without limitation, books, magazines, supplements, journals, newspapers, reports, newsletters) or electronic/online format (including, without limitation, website and microsite management and content, webinars, electronic newsletters, and electronic books) related to the managed care, rheumatology, long term care, cardiology, vascular, podiatry, dermatology and wound care industries, and the conduct of live events, tradeshows, symposia, conferences and similar activities in such industries, and (C) sponsoring, promoting, conducting and organizing continuing education programs for healthcare professionals in every industry segment, including without limitation live events, tradeshows, symposia, conferences, teleconferences, webinars, meetings, and seminars, and whether provided in print, online, over the telephone or in person. For all purposes of this Agreement, in the event that the Company or any of its Subsidiaries or Affiliates acquires any businesses during such time that Grantee is employed by the Company or its Subsidiaries or any such Affiliate, then "Competing Business" shall include such businesses, and "Competing Business" shall also include any new businesses developed by the Company or its Subsidiaries during Grantee's employment by the Company or any of its Subsidiaries. In addition, for all purposes of this Agreement, "Competing Business" shall include any projects, business, publications, or events that had been under development by the Company or any Subsidiary at any time prior to the date hereof.*

*(ii) "Protected Territory" shall mean the United States of America and any foreign country in which the Company or its Subsidiaries is engaged in a Competing Business as of the date hereof or at any time during the Term.*

*(iii) "Confidential Information" shall mean all information, in any form or medium, known to Grantee as a consequence of Grantee's employment by or ownership of the Company or any Subsidiary not generally known in the trade or industry in which such information is used that relates to the business, marketing, products, services, research or development of the Company or any of their Subsidiaries or the Company's and their Subsidiaries' suppliers,*

*customers, subscribers or circulation, advertisers, sponsors, content providers and event participants including, without limitation: (a) any agreements, commitments and rights under any orders, contracts and proposals of the Company and its Subsidiaries; (b) the Company's and its Subsidiaries' customer, subscriber, circulation, event, seminar, trade show, and conference participant lists and prospecting lists and contact persons at such customers, subscribers, circulation, conference attendees and prospects; and (c) information concerning the Company's and its Subsidiaries' relationships with their exhibitors, advertisers, sponsors, conference participants, suppliers and subscribers· or circulation.*

Equity Agreement, Sec. 8 (emphasis added).

**************************

26.     Specifically, during the aforementioned two-year restricted period, Defendant Bowden, supported by Defendant Rusling, and WCP-UK, unlawfully collaborated to create WCT-USA – a U.S. branch of Wound Care People, Ltd., – directly targeting Plaintiffs' position in the American Wound Care market as well as its customers and partners.

27.     Defendant Bowden is now identified as President of WCT-USA, which, according to its website, provides "a comprehensive range of fresh new learning materials – short modules, videos, podcasts and live events – to improve your wound care knowledge and practice."

28.     Sections 8(c) and 8(d)(iii) of the Equity Agreement covers any wound care materials or projects Defendant Bowden developed or worked on during the two-year restrictive period.

29.     Any such content he developed would necessarily incorporate Plaintiffs' property and therefore become, in whole and in part, Plaintiffs' property.

30. Accordingly, Defendant Bowden's development and use of any material with WCP-UK and WCT-USA, or Defendant Rusling with the intent to form a competing product against Plaintiffs is itself a violation a violation of the restrictive covenants in the Equity Agreement, regardless of whether Defendant Bowden used the product to directly or indirectly solicit Plaintiffs' actual or prospective customers.

31. Defendant Bowden's relationship with WCT-USA, WCP-UK, and/or Defendant Rusling and the agreements between them constitute a material breach of Defendant Bowden's non-compete obligations as well as tortious interference with the same along with an attempt to undermine Plaintiffs' market position.

32. Defendants further violated the Equity Agreement by soliciting at least one of Plaintiffs' employees, in violation of Section 8.1 of the Equity Agreement, which states:

> (8.1) Neither Party shall, for the Term of this Agreement and for a period of eighteen (18) months after its termination or expiry, employ or contract the services of any person who is or was employed or otherwise engaged by the other Party at any time in relation to this Agreement or any Project(s), without the express written consent of the other Party.

Equity Agreement, Sec. 8.1.

*****************************

33. As admitted in a December 16, 2024, correspondence, Defendants violated this section of the Equity Agreement by deliberately soliciting a key employee of Plaintiffs, Christina Bedard ("Ms. Bedard"), who was party to a Work For Hire Agreement containing

restrictive covenants that she will not work with a competitor, such as WCT-USA, for a limited period of time following her separation of employment.

34.    Defendant Bowden, with the support of the other Defendants, knew that Ms. Bedard had restrictive covenant obligations, that her resigning from Plaintiffs' employment would cause a violation of those covenants because WTC-USA is a direct competitor to Plaintiffs and still proceeded to engage in this unlawful conduct intending to harm Plaintiffs by losing a key employee.

35.    Defendants joint actions caused Ms. Bedard to resign her employment with Plaintiffs, thereby causing direct harm in the loss of valuable employee capital and resources to be utilized to train and develop an adequate replacement for her.

36.    Beyond the foregoing, Defendants further engaged in wrongful activity by unlawfully converting Plaintiffs' proprietary intellectual property and logos for their own commercial benefit.

37.    As recently as December 3, 2024, and for over two years, WCP-UK, through their brand WCT-USA, made unauthorized use of Plaintiffs' intellectual property in violation of the Equity Agreement, United States trademark law, United States copyright law, and United Kingdom copyright law.

38.    Defendants used Plaintiffs' logos and branding throughout its website for WCT-USA, despite any contractual permission for the use of the same expiring 15 months before Defendants acknowledged that they had no permission to display said logos.

39.    Specifically, the "Global" tab for WCT-USA's website purports to represent a "Global Partnership" with Plaintiffs by displaying its logos and branding.

40.    Such unauthorized use of Defendants' intellectual property was specifically prohibited by the Equity Agreement, which in relevant part states:

> (6.1) Each party shall retain all right, title and interest in and to the intellectual property of such Party, existing as of the Effective Date (the "Pre-existing Intellectual Property"). It is clarified that the respective Brands of HMP and WCP are Pre-existing Intellectual Property and neither Party shall receive right of ownership in those Brands under this Agreement.

> (6.2) The entire right, title and interest in and to any invention, work product, material, content, design, graphic, idea and/or any intellectual property related thereto (including, but not limited to, patents, copyrights, trademarks and trademarks and the applications therefore), created or developed by the Parties, jointly or separately, in connection with the Project(s) or this Agreement, including any Confidential Information relating to Project(s), shall be owned jointly by HMP and WCP (the "Project Proprietary Rights"). Neither party may independently utilize any Project Proprietary Rights other than in connection with the Project(s) without the prior written consent of both Parties.

Equity Agreement, Sec. 6.

*************************

41.    Nothing in the Equity Agreement allowed Defendants to unilaterally make use of Plaintiffs' trademarked and copyrighted logos and branding.

42.    Accordingly, Defendants never had any interest or right to use Plaintiffs' logos and branding in this context, and certainly not without Plaintiffs' prior written consent—which Defendants never received.

43.     Defendants' actions falsely represented themselves as being partnered with Plaintiffs in order to capitalize on Plaintiffs' goodwill and misleading the public into believing a partnership exists between Plaintiffs and Defendants.

**************************

## COUNT I

### Trademark Infringement in Violation of 15 U.S.C. §§ 1051 *et seq.*
### (Against all Defendants)

44.     The allegations set forth in the preceding paragraphs are incorporated herein by reference as though set forth in full.

45.     Plaintiffs are the owner of all right, title, and interest in and to its trademarks.

46.     Plaintiffs have never authorized, licensed, or otherwise permitted Defendants to manufacture, display, distribute, sell, or otherwise make use of any of Plaintiffs' trademarks.

47.     Defendants have copied, displayed, and distributed Plaintiffs' trademarks by displaying a mark on its website, which is identical or nearly identical to Plaintiffs' mark.

48.     As a direct and proximate result of Defendants' unauthorized use of Plaintiffs' mark, Plaintiffs have suffered damages to its valuable trademarked logos and branding, and other damages in an amount to be proved at trial.

49.     Defendants have realized unjust profits, gains, and advantages as a proximate result of their infringement.

**WHEREFORE,** as a result of the unlawful conduct of Defendants, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants, and grant them the maximum relief allowed by law.

## COUNT II

### Copyright Infringement in Violation of 15 U.S.C. §§ 501 *et seq.*
### (Against all Defendants)

50.     The allegations set forth in the preceding paragraphs are incorporated herein by reference as though set forth in full.

51.     Plaintiffs are the owner of all right, title, and interest in and to its copyrighted works.

52.     Plaintiffs have never authorized, licensed, or otherwise permitted Defendants to manufacture, display, distribute, sell, or otherwise make use of any of Plaintiffs' copyrights.

53.     Defendants have copied, displayed, and distributed Plaintiffs' copyrights by displaying a mark on its website, which is identical or nearly identical to Plaintiffs' mark.

54.     As a direct and proximate result of Defendants' unauthorized use of Plaintiffs' mark, Plaintiffs have suffered damages to its valuable copyrighted logos and branding, and other damages in an amount to be proved at trial.

55.     Defendants have realized unjust profits, gains, and advantages as a proximate result of their infringement.

**WHEREFORE,** as a result of the unlawful conduct of Defendants, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants, and grant them the maximum relief allowed by law.

## COUNT III

### Copyright Infringement in Violation of United Kingdom Law
### Copyright, Designs and Patents Act 1988
### (Against all Defendants)

56.    The allegations set forth in the preceding paragraphs are incorporated herein by reference as though set forth in full.

57.    Plaintiffs are the owner of all right, title, and interest in and to its copyrighted works.

58.    Plaintiffs have never authorized, licensed, or otherwise permitted Defendants to manufacture, display, distribute, sell, or otherwise make use of any of Plaintiffs' copyrights.

59.    Defendants have copied, displayed, and distributed Plaintiffs' copyrights by using Plaintiffs' logos and branding throughout its website for WCT-USA. in the United Kingdom.

60.    The United States and the United Kingdom are both signatories to the Berne Convention for the Protection of Literary and Artistic Works. Under Article V, Section I of the Berne Convention, works originating in the United States, such as Plaintiffs' logos and

branding, must be given the same protection under United Kingdom copyright law as works originating in the United Kingdom.

61.     Defendants have violated the Copyright, Designs and Patents Act 1988, c. 2, § 16 (UK).

62.     As a direct and proximate result of Defendants' unauthorized use of the copyrights in the United Kingdom, Plaintiffs have suffered damages to its valuable copyrights, and other damages in an amount to be proved at trial.

63.     Defendants have realized unjust profits, gains, and advantages as a proximate result of their infringement in the United Kingdom.

**WHEREFORE,** as a result of the unlawful conduct of Defendants, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants, and grant them the maximum relief allowed by law.

## COUNT IV

### Breach of Contract
### (Against Defendant Bowden)

64.     The allegations set forth in the preceding paragraphs are incorporated herein by reference as though set forth in full.

65.     The Equity Agreement was a valid, enforceable contract.

66.     Defendant Bowden breached his contractual duties to Plaintiffs under the Equity Agreement by creating a competitor to Plaintiffs during the two-year restrictive period.

67.    Defendant Bowden breached his contractual duties to Plaintiffs under the Equity Agreement by soliciting one of Plaintiffs' employees and its actual or prospective customers during the two-year restrictive period.

68.    Defendant Bowden breached his contractual duties to Plaintiffs by making unauthorized use of Plaintiffs' intellectual property during the two-year restrictive period.

69.    As a direct and proximate result of Defendant Bowden's breach of the Equity Agreement, Plaintiffs have suffered damages, including without limitation all sums due and owing under the foregoing agreements plus interest, costs, and attorney's fees.

**WHEREFORE,** as a result of the unlawful conduct of Defendant Bowden, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendant Bowden for all sums due under the Equity Agreement plus interest, costs, attorney's fees and such further relief as the Court finds proper.

## COUNT V

### Intentional Interference of Contractual Relations
### (Against all Defendants)

70.    The allegations set forth in the preceding paragraphs are incorporated herein by reference as though set forth in full.

71.    Plaintiffs had a contractual relationship with Ms. Christina Bedard.

72.    Defendants intentionally and purposefully interfered with the contractual relationship between Plaintiffs and Ms. Bedard by soliciting her.

73.    Defendants' interference with the contractual relationship between Plaintiffs and Ms. Bedard was intentional and without justification.

74.    As a direct and proximate result of Defendants' actions, Plaintiffs have suffered damages.

**WHEREFORE,** as a result of the unlawful conduct of Defendants, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants for all sums due under the Equity Agreement plus interest, costs, attorney's fees and such further relief as the Court finds proper.

## COUNT VI

### Intentional Interference of Contractual Relations
### (Against Wound Care People, Ltd. And Defendant Rushing)

75.    The allegations set forth in the preceding paragraphs are incorporated herein by reference as though set forth in full.

76.    Plaintiffs had a contractual relationship with Defendant Bowden.

77.    Defendant Wound Care People, Ltd. and Defendant Rushing intentionally and purposefully interfered with the contractual relationship between Plaintiffs and Defendant Bowden.

78.    Defendants' interference with the contractual relationship between Plaintiffs and Defendant Bowden was intentional and without justification.

79.    As a direct and proximate result of Defendants' actions, Plaintiffs have suffered damages.

**WHEREFORE,** as a result of the unlawful conduct of Defendants, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants for all sums due under the Equity Agreement plus interest, costs, attorney's fees and such further relief as the Court finds proper.

## COUNT VII

### Civil Conspiracy
### (Against all Defendants)

80.    The allegations set forth in the preceding paragraphs are incorporated herein by reference as though set forth in full.

81.    Defendants, acting in concert with each other, knowingly and intentionally conspired to harm Plaintiffs' business interests and well-being.

82.    As a direct and proximate result of Defendants' actions, Plaintiffs have suffered damages.

**WHEREFORE,** as a result of the unlawful conduct of Defendants, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants for all costs, attorney's fees, and such further relief as the Court finds proper.

## COUNT IX

### Violation of Pennsylvania's Uniform Trade Secrets Act
### (Against Defendant Bowden)

83.    The allegations set forth in the preceding paragraphs are incorporated herein by reference as though set forth in full.

84.    Defendant Bowden acquired access to at least the following Plaintiff-owned trade secrets during his employment with Plaintiffs:

   a.  the identity of actual customers, prospective customers, referral sources, and the names, addresses and telephone numbers of individual contacts;
   b.  pricing policies, marketing and sales strategies, and service development strategies;
   c.  prices, renewal dates, and other detailed terms of customer and supplier contracts and proposals;
   d.  employment and payroll records; and
   e.  business strategies, business policies, expansion plans, and management policies.

85.    Plaintiffs' trade secrets are not available to the general public and were assembled at substantial expense to Plaintiffs.

86.    Plaintiffs take substantial measures to protect the secrecy of its trade secrets, including, but not limited to, requiring Defendant Bowden to sign a nondisclosure covenant in his Equity Agreement with Plaintiffs.

87.    Plaintiffs' trade secrets derive economic value from not being generally known and not being properly and readily ascertained by other persons who can obtain economic value from its disclosure or use.

88.    Plaintiffs' trade secrets provide Plaintiffs a competitive advantage in the marketplace.

89.    Defendant Bowden held a position of trust and confidence as a key officer of Plaintiffs.

90.    Defendant Bowden was not privileged to take any such confidential information.

91.     Defendant Bowden's misappropriation of Plaintiffs' confidential information was conducted willfully and maliciously.

92.     Defendant Bowden's conduct violates the Pennsylvania Uniform Trade Secrets Act in that he misappropriated Plaintiffs' trade secrets, as that term is defined under the Act, and has used that information in an unlawful manner under 12 PA. CONS. STAT. §§ 5301-5308 (2004).

93.     The Pennsylvania Uniform Trade Secrets Act provides for injunctive relief, damages, and reasonable attorney's fees to the prevailing party.

94.     Defendant Bowden's conduct involved willful and malicious misappropriation in violation of the Pennylvania Uniform Trade Secrets Act.

95.     Defendant Bowden used and disclosed Plaintiffs' trade secrets without express or implied consent for the benefit of himself and his newly created competitor of Plaintiffs.

96.     At the time of Defendant Bowden's improper use and disclosure of Plaintiffs' trade secrets, Defendant Bowden knew that he had acquired the trade secrets under circumstances giving rise to his duty to maintain the secrecy and limit the use of such trade secrets.

97.     By working, directly or indirectly, for a competitor working to obtain Plaintiffs' customers, Defendant Bowden will inevitably continue to use, disclose, and misappropriate Plaintiffs' trade secrets for the benefit of himself and WCT-USA.

98.     The Pennsylvania Uniform Trade Secrets Act protects against unfair competition by prohibiting Plaintiffs' employees form using Plaintiffs' trade secrets in order to compete with Plaintiffs.

99.     Use of Plaintiffs' trade secrets by Defendant Bowden would unjustly enrich him.

100.    Plaintiffs have suffered, and will continue to suffer, substantial and irreparable damage as a result of Defendant Bowden's conduct, and Plaintiffs have no adequate remedy at law for such irreparable damage.

101.    Defendant Bowden's conduct is a direct and proximate cause of Plaintiffs' damages.

**WHEREFORE**, as a result of Defendants unlawful conduct as described above,  Plaintiffs respectfully request that this Court enter judgment in their favor and against the Defendants, jointly and severally, for the following:

A.      Actual damages that Plaintiffs are entitled to recover as a result of Defendant Bowden's violation of the Pennsylvania Uniform Trade Secrets Act;

B.      Exemplary and/or punitive damages as permitted by the Pennsylvania Uniform Trade Secrets Act and pursuant to Pennylvania common law;

C.      Compensatory damages and interest, as allowed pursuant to Pennsylvania common law.

D.      A preliminary and permanent injunction enjoining Defendant Bowden from using, disclosing, or revealing any trade secret belonging to Plaintiffs;

E.      Plaintiffs' attorneys' fees and costs as permitted by the Pennsylvania Uniform

Trade Secrets Act; and

F.      All such other relief as this Court deems appropriate

<u>**JURY DEMAND**</u>

Plaintiffs hereby demand a trial by jury as to all issues so triable.

MARGOLIS EDELSTEIN

MICHAEL R. MILLER, ESQUIRE
Attorney I.D. No. 306904
The Curtis Center
170 S. Independence Mall West – Suite 400E
Philadelphia, Pennsylvania 19106-3337
Telephone:    215-931-5808
Email:        mmiller@margolisedelstein.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HMP Omnimedia, LLC;                              :    Civil Action No.:

HMP Global, LLC                                  :
70 Swedesford Rd,                                :
Malvern, Pennsylvania 19355                      :
                                                 :
    Plaintiff,                   :    **JURY TRIAL DEMANDED**
                                                 :
        v.   :
                                                 :
WOUND CARE PEOPLE, LTD;                           :
WOUND CARE TODAY USA, LLC                         :
EDWARD RUSLING; And                              :
JEREMY BOWDEN                                     :
                                                 :
    Defendants.                  .

---

### CERTIFICATION OF COUNSEL PURSUANT TO LOCAL RULE 53.2(3)(C)

I, Michael Miller, Esquire, am a Partner in the law firm of Margolis Edelstein and represent Plaintiffs in the above-captioned litigation. I hereby certify in accordance with Local Rule 53.2(3)(C) that the amount of damages sought by Plaintiffs exceeds $150,000.00, exclusive of interest and costs.

        **MARGOLIS EDELSTEIN**

        *Michael Miller*

        MICHAEL R. MILLER, ESQUIRE
        Attorney I.D. No. 306904
        The Curtis Center
        170 S. Independence Mall West – Suite 400E
        Philadelphia, Pennsylvania 19106-3337
        Telephone:   215-931-5808
        Email:     mmiller@margolisedelstein.com